Barry Kirschner SBN 005591
bkirschner@wechv.com

LAW OFFICES
WATERFALL, ECONOMIDIS,
CALDWELL
HANSHAW & VILLAMANA, P.C.
Williams Center, #800
5210 E. Williams Circle
Tucson, AZ  85711
(520) 790-5810

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Susan Gonzalez,<br><br>            Plaintiff,<br><br>vs.<br><br>Life Insurance Company of North America, a/k/a CIGNA Group Insurance; Trustee of the Group Insurance Trust for Employers in the Services Industry Participating Subscriber: The University of Arizona Health Network; John Does 1-4,<br>            Defendants. | No.<br><br>**COMPLAINT**<br><br>Assigned to: |

Plaintiff Susan Gonzalez ("Gonzalez") for her Complaint alleges:

1. Gonzalez is a long time resident of Pima County, Arizona, and a participant in The University of Arizona Health Network, who has received long term disability (LTD) benefits. The termination of those LTD benefits is the subject out of which this civil action for relief arises.

2. This dispute is within the jurisdiction of this United States District Court for the District of Arizona. 29 USC section 1132 (a)(1)(B) and (a)(3).  Venue is proper.

3. The Defendant Life Insurance Company of North American (LINA) has been the paying source of the LTD benefits and has been the decision maker regarding Gonzalez' claim for benefits.

4. The relevant contract with LINA, which is the Plan document, describes:

"Policyholder: Trustee of the Group Insurance Trust for Employers in the Services Industry.

Participating Subscriber: The University of Arizona Health Network."

Hereafter this Subscriber will be called Defendant "Plan," "*Banner*" or "*U of A Health Network*".

5. Defendants John Does 1-4 are nominal and listed in the caption in case defendants do not agree that the proper Plan has been named as a defendant and/or properly served in this civil action. The actions of John Does 1-4 are alleged to be identical to those attributed to "Banner" or the U of A Health Network" as described elsewhere in this Complaint.

6. This dispute is ripe for adjudication. Gonzalez has satisfied all requirements of exhaustion of remedies to bring this civil action.

7. The purpose of Congress in enacting the Employee Retirement Income Security Act (ERISA) is described in 29 USC § 1001(b):

> It is hereby declared to be the policy of this chapter to protect interstate commerce and the interests of participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts.

29 USC § 1001(b).

8. This civil action is within the scope of ERISA.

9. Defendants LINA as Claim Administrator and Banner as Plan Administrator owe a fiduciary duty to its member participants such as Gonzalez.

10. As Claim Administrator LINA has a structural conflict of interest in performing its duties as a fiduciary.

11. On information and belief, any payment of LTD benefits under the Plan would be from LINA and not reimbursed by the Plan.

12. Defendants are responsible for complying with a standard of care in discharging duties with respect to ERISA claims solely in the interest of participants and beneficiaries of the Plan.

13. The duty Defendants owe Gonzalez is that of a Fiduciary.

FACTUAL BACKGROUND

14. Gonzalez enjoyed a decades long career as a registered nurse (RN). Her regular occupation prior to becoming disabled by shoulder ailments was Emergency Room (ER) Nurse.

15. In 2012 Gonzalez was afflicted with serious problems to her right shoulder. Her status includes post right shoulder rotator cuff repair and hemiarthroplasty joint replacement (2012) and post right shoulder arthroscopic debridement and subacromial decompression (2014).

16. Gonzalez has been diagnosed with ailments in addition to severe shoulder problems. These include degenerative disc disease (at L4-5) and bilateral slowed nerve conduction in her arms.

17. Gonzalez ceased working at her regular occupation December 9, 2013.

18. Gonzalez was employed by Banner, the University of Arizona Health network (Banner).

19. Gonzalez applied for and was determined eligible for the maximum period of short term disability (STD) benefits under the relevant Plan.

20. Gonzalez applied for LTD benefits from Defendants and was determined to be eligible effective June 7, 2014 as no longer medically able to perform her regular occupation because of her medical difficulties, specifically her shoulder difficulties.

21. Gonzalez continued on LTD benefits until she received the March 31, 2016 letter notifying her that her benefits would be terminated effective June 6, 2016. That letter acknowledged Gonzalez continued to be disabled, for physical reasons, to perform her regular occupation.

22. The letter notified Gonzalez that she should send her appeal, if any, to defendants within 180 days of the June 7, 2016 date when her benefits would first be terminated.

23. Gonzalez filed her timely appeal dated December 2, 2016. That appeal (without exhibits) is attached as <u>Exhibit 1</u> to this Complaint ("administrative appeal").

**LINA'S APPEAL DECISION AGREES THAT GONAZLEZ IS TOALLY DISABLED FOR PHYSICAL REASONAS BUT STILL TERMINATES HER BENEFITS**

24. That administrative appeal was decided partly in Gonzalez' favor.

25. By letter dated April 7, 2017, postmarked April 12, 2017, and first received by Gonzalez' counsel April 17, 2017, Gonzalez learned of the determinations made by Defendants in response to her administrative appeal. The letter is attached as Complaint Exhibit 2. The envelope with postmark and the law firm received stamp is copied and attached as Exhibit 3.

26. Defendants concluded that Gonzalez continued to be medically disabled for <u>physical</u> <u>reasons</u> as of the time of the last record then in its possession (November 8, 2016).

27. The continued medical disability of Gonzalez was determined by LINA to be not only for the "own occupation" first two years of the LTD benefit period, but Gonzalez

was found to be unable to perform <u>any</u> type of occupation through at least November 8, 2016.

28. The opinion of the medical reviewing Pain Specialist was interpreted by Defendants:

> The reviewing pain medicine specialty [sic] found that based on the clinical records, Ms. Gonzalez does present with chronic low back and radicular pain that is impacting her functional capabilities. She did have a functional capacity evaluation completed on July 6, 2016 which noted consistent effort and found she was essentially unable to perform at a sedentary physical demand level. Ms. Gonzalez' physical therapy assessment from July 12, 2016 also noted increased tone to palpation in the left lumbar paraspinals, tenderness over the left gluteus, decreased active range of motion of the lumbar spine, hypomobility at L3-5 and decreased muscle strength in the bilateral gluteal and hip muscle on the physical examinations.
>
> Given Ms. Gonzalez' findings, <u>the records support that she was reasonably totally disabled from any type of work from June 6, 2016 through November 8, 2016.</u> Additional documentation would be needed in order to support that at [sic] she had any continuing functional impairments after November 8, 2016 that would have required continuing restrictions and limitations. [Emphasis added.]

Exhibit 2, pages 3-4.

29. In a March 3, 2017 medical report, Cigna retained reviewing Board Certified Anesthesiologist and Pain Medicine specialist Arvinder Gill concluded that Gonzalez was medically disabled for <u>physical</u> reasons for the entirety of the time of her LTD claim until the last medical record he possessed from November 2016.

30. Dr. Gill concluded from the time period he was asked about which began June 6, 2016 until the date of the last medical record which he possessed that: "From 06/06/16 to 11/08/16, the records would support that the claimant was reasonably totally disabled. As such, there would be no amount of restrictions which could have allowed the claimant to return to work in any capacity."

31. Defendants also had Gonzalez administrative appeal reviewed by a psychiatrist who agreed that Gonzalez would be unable to work as a result of grieving for her father's death as of the time that Defendants cut off her benefits effective June 7, 2016.

32. In a March 22, 2017 addendum, Cigna retained reviewing Board Certified Psychiatrist Leila Laitman concluded that "Thus, MI would not be supported from 01/05/15 going forward until 06/20/16. At that time, she was noted to be in acute grief after losing her father."

33. In context, on information and belief, Cigna was asking Dr. Laitman whether mental illness (MI) was a basis for Gonzalez' medical disability from working from January 5, 2015- June 20, 2016. Laitman's response indicates her opinion that it was not.

34. Defendants stated that Gonzalez had been diagnosed with mental health symptoms since January 5, 2015.

35. Defendants agreed to pay continued LTD benefits to Gonzalez through January 4, 2017.

36. Defendants cut off benefits to Gonzalez effective January 5, 2017.

37. Defendants attempt to justify its benefit cut off effective January 5, 2017 with two paragraphs which state:

> In addition, since Ms Gonzalez' [sic] has been diagnosed due to mental health since January 5, 2015, we concluded that her inability to work is supported through January 4, 2017. While we understand that Ms. Gonzalez' diagnoses for anxiety continues beyond this date, please note that mental health condition provision in policy LK 961461, indicated above, has a maximum benefit payment of 24 months payable under the Limited benefit Periods.
>
> Please be advised that Ms. Gonzalez' claim will remain closed as of January 5, 2017, and no further benefits will be released.

Exhibit 2, page 3.

**GONZALEZ WAS TOTALLY DISABLED FROM HER REGULAR OCCUPATION FOR PHYSICAL AILMENTS FOR THE ENTIRE 24 MONTHS OF THE "REGULAR OCCUPATION" PORTION OF THE RELEVANT DISABILITY POLICY**

38.  The relevant LTD Policy defines disability as described in its April 7, 2017 letter:

> The Employee is considered Disabled if, solely because of Injury or Sickness, he or she is:
>
> 1. unable to perform the material duties of his or her Regular Occupation; and
>
> 2. unable to earn 80% or more of his or her Indexed Earnings from working in his or her Regular Occupation.
>
> After Disability Benefits have been payable for 24 months, the Employee is considered Disabled if, solely due to Injury or Sickness, he or she is:
>
> 1. unable to perform the material duties of any occupation for which he or she is, or may reasonably become, qualified based on education, training or experience; and
>
> 2. Unable to earn 60% or more of his or her Indexed Earnings.

Exhibit 2, page 1.

39.  All relevant medical evidence confirms that Gonzalez was unable to perform the material duties of her regular occupation for <u>physical</u> reasons from June 7, 2014 through at least November 8, 2016.

**LINA INCORRECTLY LIMITS GONZALEZ BENEFITS WHILE SHE IS DISABLED FOR PHYSICAL REASONS WHILE ALSO BEING TREATED FOR ANXIETY**

40.  The mental and nervous conditions which were developed by Gonzalez and for which she sought treatment beginning January 2015 were caused by her status of

8/14/2017 2:07 PM  7

inability to perform in the occupation she had long held, and the corresponding stressors of lack of income and sense of purpose from not contributing her employment skills.

41. Defendants have incorrectly terminated Gonzalez benefits again, this time effective January 5, 2017.

42. Defendants attempt to justify the January 5, 2017 termination of Gonzalez benefits as authorized by a mental and nervous (M&N) disorder limitation. As quoted in its April 7, 2017 letter this limitation reads:

> The Insurance Company will pay Disability Benefits on a limited basis during an Employee's lifetime for a Disability caused by, or contributed to by, any one or more of the following conditions. Once 24 monthly Disability Benefits have been paid, no further benefits will be payable for any of the following conditions.
>
> 1) Alcoholism
> 2) Anxiety disorders
> 3) Delusional (paranoid) disorders
> 4) Depressive disorders
> 5) Drug addiction or abuse
> 6) Eating disorders
> 7) Mental illness
> 8) Somatoform disorders (psychosomatic illness)

Exhibit 2, page 2.

43. Defendants have improperly and unreasonably read this limitation to become active in the case of Gonzalez as of January 5, 2015, during the initial 24 month time period when there is no doubt that Gonzalez was medically disabled for <u>physical</u> reasons.

44. Defendants have improperly and unreasonably read this limitation to limit benefits in the case of Gonzalez, although Gonzalez' psychological problems are secondary to and derived from the physical medical disability and related loss of income.

45. Defendants have improperly and unreasonably read this limitation to limit benefits in the case of Gonzalez, although Gonzalez continues to be medically disabled for <u>physical</u> reasons if they stood alone.

46. It is also improper for defendants to apply the M&N limitation where the source of the M&N is the loss of employment due to the medical disability.

47. On information and belief, LINA has guidelines for interpreting its policies of disability insurance with similar language to give full credit to a claimant who is disabled from doing her regular occupation for physical reasons due to medical ailments before beginning the time for the 24 month mental and nervous disorder limitation.

48. LINA has historically interpreted its Policies of insurance where the disabling factor for the 24 month regular occupation is clear considering physical ailments alone, that there would be no beginning of the 24 month mental & nervous disorder limitation as long as the physical component was itself sufficiently difficult to be disabling.

49. LINA in interpreting Gonzalez as no longer qualified for benefits is in violation of reasonable interpretations of the relevant case law.

50. Well-established case law disallows limitation for a mental illness derived from the underlying physical disabling injuries and loss of income and self-esteem from being applied to limit the benefits which are clearly established as due as a result of physically disabling medical ailments. E.g.; *Okuno v. Reliance Standard Life Insurance Co.*, 836 F.3d 600 (6th Cir. 2016); *Jarillo v. Reliance Standard Life Insurance Co.*, 2017 WL 1400006, at *12 (S.D. Ca. April 19, 2017); *Lang v. Long Term-Disability Plan of Sponsor Applied Remote Technology, Inc.*, 125 F.3d 794, 799 (9th Cir. 1997); *Kitterman v. Standard Insurance Co.*, 2011 WL 1541310 (D. Or. 2011); *Perryman v. Provident Life & Accident Ins. Co.*, 690 F. Supp. 2d 917, 951 (D. Ariz. 2010); *Lamarco v. Cigna Corp.*, 2000 WL 1456949, at *7 (N.D. Cal. 2000).

51.  LINA is without reasonable analysis within case law to support its position that in spite of a fully disabling physical ailment from the claimant's regular occupation, that the mental and nervous disorder limitation should be interpreted to begin "running" prior to the two year end of the regular occupation period.

**LINA FAILED TO CONSIDER THE DECISION OF THE SOCIAL SECURITY ADMINISTRATION ADMINISTRATIVE LAW JUDGE GRANTING HER SOCIAL SECURITY DISABILITY INSURANCE BENEFIT**

52.  LINA was aware that as it was considering the Gonzalez administrative appeal of the 2016 termination of her benefits, that Gonzalez' claim for Social Security Disability Insurance (SSDI) was being considered by the Social Security Administration.

53.  On April 6, Gonzalez (through counsel) notified LINA that the Social Security Administration Administrative Law Judge ("ALJ") had ruled in favor of Gonzalez on her claim for Social Security Disability Income ("SSDI") benefits.

54.  Notice of the favorable ruling and a copy of the ruling were sent by fax to Disability Claims Manager Cathy Hanns starting 9:55 a.m. April 6.  See Exhibit 4, Fax cover sheet of April 6, 2017 to Cathy Hanns.

55. Notice of the favorable ruling and a copy of the ruling were sent by fax to Disability Claims Manager Linda Gump starting 11:44 a.m. April 6.  See Exhibit 5, fax cover sheet of April 6, 2017 to Linda Gump.

56.  LINA's letter partially reversing its decision but again terminating Gonzalez was sent by letter to Gonzalez' counsel. The letter bears a date of April 7, 2017. The envelope in which the letter arrived at the office of Gonzalez counsel on April 17, 2017 bears a postmark of April 12, 2017. See Exhibit 3.

57.   On April 17, 2017, counsel sent by fax to Linda Gump a request from Gonzalez for all relevant materials as defined by the United States Department of Labor including the entire claim file, electronic entries, and procedures for the administration of

1 the claim and all relevant data.  See Exhibit 6, fax cover sheet starting 2:07 P.M. to Linda Gump.

58. LINA notes receipt of this letter by April 18, 2017 in its claims file.

59. By May 3, 2017 the Gonzalez file was assigned (again) to Cathy Hanns.

60. LINA responded May 18, 2017 with data from its files regarding Gonzalez to reflect the documents it received and the dates of receipt.

61. Nowhere in LINA's file does it reflect consideration, or even receipt of the knowledge that SSDI had ruled in favor of Gonzalez.

62. LINA references in its file that on April 6:  "Recency of SSDI decision and information N/A"

63. On information and belief, within LINA's codes, N/A means no information available.

64. Even assuming that at the time of its April 6 note LINA had no information about the substance of the SSDI decision, it had that information prior to the date of its April 7 letter.

65. LINA received the ALJ's SSDI opinion before depositing its adverse decision on Gonzalez in the postal system.

66. LINA ignored the information supportive of Gonzalez claim in the SSDI decision.

67. LINA violated its obligation to look for evidence, and analyze evidence in support of the Gonzalez claim by not considering the ALJ's SSDI decision.

68. LINA has violated its obligation in maintaining an appropriately complete and unbiased record of the Gonzalez claim by not including information favorable to Gonzalez concerning her SSDI decision.

# COUNT 1

## **DECLARATORY JUDGMENT**

69. Gonzalez incorporates all paragraphs above as if fully set forth herein.

70. Defendant(s) have a financial conflict of interest which has influenced LTD decision making adverse to the interests of Gonzalez.

71. Defendants have breached their fiduciary duties by not performing their duties solely in the interests of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries as required by ERISA, 29 U.S.C. § 1104(A)(1).

72. Defendants improperly terminated the Gonzalez claim for LTD benefits.

73. Gonzalez seeks a declaration by this Court that she is entitled to long term disability benefits, and all other relief including equitable relief for detriment caused Gonzalez by procedural irregularities of Defendants, particularly LINA. Gonzalez asks for a Declaratory Order that:

   a. Gonzalez is entitled to continuing LTD benefits pursuant to her claim;

   b. Gonzalez be entitled to LTD back benefits;

   c. The relief available to Gonzalez from 29 U.S.C. § 1132(a)(1)(B) is not adequate;

   d. Limiting Gonzalez to Section 1132(a)(1)(B) relief would be inequitable;

   e. That relief to Gonzalez pursuant to 29 U.S.C. § 1132(a)(3) is proper;

   f. That Defendant Lina has breached its fiduciary duty;

   g. Gonzalez be awarded attorneys' fees and costs in appropriate amounts from Defendants;

   h. Gonzalez receive all relief appropriate under the circumstances, equitable and/or legal; and

      i.      Neither the Plan, Plan Administrator, nor Claim Administrator be unjustly enriched as a result of the denial of timely LTD benefits to Gonzalez.

      j.      Gonzalez asks the Court to find that Defendants should be Ordered to provide to Gonzalez all information generated or received regarding Gonzalez which should be in the claim file, including its Special Investigation Unit ("SIU") accessible to Gonzalez.

WHEREFORE this Court should enter its order declaring that Plaintiff is entitled to back benefits with interest, continuing benefits, attorneys' fees, costs, all other relief listed above and/or applicable under law or equity, or deemed just under the circumstances.

RESPECTFULLY SUBMITTED August 14, 2017.

                WATERFALL, ECONOMIDIS, CALDWELL,
                HANSHAW & VILLAMANA, P.C.

                By s/Barry Kirschner
                    Attorneys for Plaintiff